UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAIN GUTTER PROS, LLC, a Washington Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MGP MANUFACTURING, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | CASE NO. C14-0458 RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Dkt. #19. Defendant, MGP Manufacturing, LLC ("MGP"), argues that Plaintiff's claims should be dismissed for lack of standing because there was no actual case or controversy at the time the action was initiated. *Id.* Alternatively, Defendant argues that the action should be dismissed because it fails to meet proper pleading standards. *Id.* Plaintiff, Rain Gutter Pros, LLC ("RGP"), opposes the motion, arguing that the totality of the circumstances demonstrates an actual case or controversy sufficient to allow this matter to move forward on all claims, and that the pleading standards have been sufficiently met. Dkt. #21. For the reasons set forth below, the Court agrees in part with Plaintiff, and GRANTS IN PART and DENIES IN PART Defendant's motion.

ORDER
PAGE - 1

## II. BACKGROUND

This case involves allegations of patent infringement and invalidity. On March 28, 2014, RGP filed a Declaratory Judgment action seeking a declaratory judgment that it does not infringe any valid claim of United States patent numbers 8,397,436 and RE43,555. Dkt. #1. RGP filed an Amended Complaint on April 15, 2014, requesting the same relief. Dkt. #5. The Complaint apparently arises from a letter sent to RGP by MGP's patent insurance company ("Intellectual Property Insurance Services Corporation" or "IPISC") on May 18, 2014, wherein IPISC alerted RGP to certain patents owned by MGP, invited RGP to review the patents and then invited RGP to call MGP to discuss the patents, but did not explicitly accuse RGP of infringement. Dkt. #5, Ex. A.

## III. DISCUSSION

### A. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

In deciding a 12(b)(6) or 12(c) motion, this Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly

judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must construe the complaint in the light most favorable to the Plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

**B. Article III Standing**

The Court first addresses Defendant's standing arguments. The doctrine of standing is an essential part of the case-or-controversy requirement of Article III and is a constitutional prerequisite for a federal court to have subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Article III's prerequisites apply to actions requesting declaratory relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-28, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). In the patent context,

there is an actual controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). In order to establish standing, the U.S. Supreme Court has "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 127 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 81 L. Ed. 617 (1937)). The Court has recognized that this is not a bright line inquiry, but is, rather, dependant upon the facts in each case. *Id.*

Since *Medimmune*, *supra*, a number of Federal Circuit cases have applied this fact-based, "all the circumstances" test to determine when standing exists to seek declaratory judgment of non-infringement or the invalidity of a patent. In so doing, courts have looked at a number of factors, including: the depth and extent of infringement analysis conducted by the patent holder, *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1374-76 (Fed. Cir. 2007); the strength of any threatening language in communications between the parties, *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1346-47 (Fed. Cir. 2011); whether the patent holder imposed a deadline to respond, *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362-63 (Fed. Cir. 2009); any prior litigation between the parties, *id.*; the patent holder's history of enforcing the patent-in-suit, *Micron Tech., Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 899 (Fed. Cir. 2008); whether the patent holder's threats have induced the alleged infringer to

change its behavior; *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012) *cert. granted on other grounds*, 133 S. Ct. 694, 184 L. Ed. 2d 496 (2012) ("*Myriad*"); the number of times the patent holder has contacted the alleged infringer, *Hewlett-Packard Co.*, *supra*, 587 F.3d at 1364; *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1334 (Fed. Cir. 2008); whether the patent holder is simply a holding company with no sources of income other than enforcing patent rights, *id.*; whether the patentee refused to give assurance it will not enforce its patent, *Prasco*, *supra*, 537 F.3d at 1341; whether the patent holder has identified a specific patent and specific infringing products, *id.*; *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 158-60 (D. Mass. 2009), the extent of the patent holder's familiarity with the product prior to the suit, *Prasco*, 537 F.3d at 1334; *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1380 (Fed. Cir. 2010) *cert. denied*, 131 S. Ct. 424, 178 L. Ed. 2d 324 (2010); the length of time transpired after the patent holder assert infringement, *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1321 (Fed. Cir. 2012); and whether communications initiated by the declaratory judgment plaintiff have the appearance of an attempt to create a controversy in anticipation of filing suit, *Innovative Therapies*, 599 F.3d. at 1381.

In the instant matter, the Court finds several of the above cases to be instructive. For example, in *Hewlett-Packard Co. v. Acceleron LLC*, the court found standing to seek a declaratory judgment against a defendant patent holding company that had, as in this case, sent a letter to "call [the plaintiff's] attention to "one of the defendant's patents that "relates to" a specified line of the plaintiff's products, and then later sent a follow up letter. 587 F.3d 1358, 1360 (Fed. Cir. 2009). The court noted that "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot

ORDER
PAGE - 5

establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute, 'nor could standing' be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Id.* at 1362 (citations omitted).  However, the court ultimately found the dispute to be justiciable, pointing to the fact that the patentee had twice contacted the plaintiff making an implied assertion of rights against specific products under a specific patent. *Id.* at 1364.

As in *Hewlitt-Packard*, RGP also received a letter inviting it to review certain patents. Dkt. #5, Ex. A.  The letter identified MGP as the owner of the patents, stated that IPISC had insured MGP under a policy that provides funds to legally enforce patents, informed RGP that it had come to IPISC's attention that RGP was "making, marketing, recruiting dealers, and/or selling gutter protection products which appear to be either the same or nearly identical" to the patented products, and invited RGP to review the patents.  *Id.*  MGP now describes this correspondence as a simple invitation to talk.  Given the circumstances, the Court finds such position disingenuous.  This is particularly true given a follow up letter from MGP's attorney stating, "In considering all of the information that you and your client have brought to MGP's attention, as well as additional publically available information describing your client's products, MGP is now even more confident in its infringement position."  Dkt. #5, Ex. D. Although RGP had not received that letter at the time of filing this suit, the statement in that letter was certainly made prior to MGP bringing the instant motion.  Further, given that the letter came from MGP's insurance company and explicitly referenced the fact that the insurance policy provided funds for the Insured to enforce its patents, it was not unreasonable for RGP to read the March 18th letter as implicitly asserting rights under the referenced patent. *See Hewlett-Packard Co. v. Acceleron*, 587 F.3d at 1363 ("'The test [for declaratory judgment

ORDER
PAGE - 6

jurisdiction in patent cases], however stated, is objective . . . .'  'Indeed, it is the objective words and actions of the patentee that are controlling.'  Thus, conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction.") (citations omitted).

Similarly, in *3M Co. v. Avery Dennison Corp.*, *supra*, the court found engaging in certain informal discussions could be sufficient to create a justiciable controversy.  673 F.3d 1372, 1376 (Fed. Cir. 2012).  The Federal Circuit emphasized that "[t]o establish the existence of a 'definite and concrete' dispute, more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other party's product line.'"  *3M Co. v. Avery Dennison Corp.*, 673 F.3d at 1378-79 (citation omitted).  However, "[h]ow much more is required is determined on a case-by-case analysis."  *Id.*  In this case, the Court holds that, based on the totality of the circumstances, there is declaratory judgment jurisdiction arising from a "definite and concrete" dispute between RGP and MGP, who are parties having adverse legal interests.

### C.  Alleged Failure to Meet Pleading Standard

MGP next alleges that RGP's claims should be dismissed because RGP fails to meet the required pleading standards for claims one through six.  The Court addresses each claim in turn, below.

*1.  Claims 1 and 2*

Claims one and two seek declarations of non-infringement of the '436 and '555 patents. Dkt. #5 at ¶ ¶ 28-33.  Plaintiff asserts that it has not literally infringed, contributed to the infringement, or induced anyone to infringe the patents, either literally or under the doctrine of equivalents.  *Id.*  In support of these claims, RGP has identified one of its products and the

ORDER
PAGE - 7

claim elements from both asserted patents that it believes are missing. Dkt. #5 at ¶¶ 18 and 21. The Court finds this adequate to allege plausible non-infringement claims against MGP, and denies MGP's requests to dismiss these claims.

    *2. Claims 3 and 4*

Claims three and four seek declarations of invalidity of the '436 and '555 patents. Dkt. #5 at ¶¶ 34-37. While RGP argues in response to the motion to dismiss that prior art listed on the face of the patents would render the claims of the patents obvious if MGP is allowed to broaden the scope of its patents, no facts are actually alleged in the Amended Complaint to support that position. *See* Dkt. #5 at ¶¶ 7-27. Accordingly, the Court agrees that these claims should be dismissed for failure to meet the proper pleading standards.

    *3. Claims 5 and 6*

Claims five and six seek declarations of patent misuse. Dkt. #5 at ¶¶ 38-43. RGP primarily bases these claims on the assertion that MGP (via IPISC) sent the March 18th letter to it "in an effort to squelch legitimate and lawful competition and to unfairly compete against Rain Gutter Pros." Dkt. #5 at ¶ 19 and Dkt. #21 at 5 and 18-19. Patent misuse is an equitable defense to a claim of patent infringement designed to prevent the patentee from impermissibly extending the monopoly granted by the patent. *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184-85 (Fed. Cir. 2005). Certain activities constitute *per se* patent misuse, such as when a patentee with market power conditions a license under the patent on the purchase of separate, unpatentable goods or attempts to extend the term of the patent by contractually requiring payment of post-expiration royalties. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). Other activities, however, have been statutorily excluded from the doctrine of patent misuse even though they arguably have an anti-competitive effect. *U.S.*

ORDER  
PAGE - 8

*Philips*, 424 F.3d at 1185-86.  Indeed, in 35 U.S.C. § 271(d)(3), Congress declared that a patent owner may seek "to enforce his patent rights against infringement or contributory infringement" without being guilty of misuse or illegal extension of the patent right.

Plaintiff does not acknowledge or attempt to distinguish the safe harbor provided under section 271(d).  Moreover, Plaintiff has pleaded no facts in the Amended Complaint to support the misuse claims.  Accordingly, the Court agrees that these claims should be dismissed for failure to meet the proper pleading standards.

   *4. Claim 7*

Finally, MGP argues that Plaintiff's Claim seven, which is a claim for alleged violation of Washington's Consumer Protection Act, is preempted by federal patent law.  Dkt. #19 at 14-15.  Plaintiff responds that it now withdraws Claim seven.  Accordingly, Defendant's motion to dismiss on that claim is now moot.  The Court requires no further action of Plaintiff with respect to that claim, with the understanding that the claim is no longer being pursued in this matter.  However, nothing in this Order precludes Plaintiff from filing a Second Amended Complaint omitting the claim.

   **D. Leave to Amend**

In the event a court finds that dismissal is warranted, it should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In this case, Plaintiff has requested leave to amend, Dkt. #21 at 16, and MGP has not demonstrated at this time that amendment would be futile.  *See* Dkt. #24. Accordingly, RGP may file a Second Amended Complaint no later than ten (10) days from the date of this Order in an effort to remedy the deficiencies identified by this Court.  However,

ORDER
PAGE - 9

nothing in this Order precludes Defendant from renewing its motion to dismiss should it believe such action is necessary after reviewing any Second Amended Complaint.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby FINDS and ORDERS:

1. Defendants' Motion for Judgment on the Pleadings (Dkt. #19) is GRANTED IN PART and DENIED IN PART;

2. Plaintiff has standing to proceed with this action;

3. Defendant's Motion to Dismiss Claims One and Two of the Amended Complaint is DENIED;

4. Defendant's Motion to Dismiss Claims Three, Four, Five and Six is GRANTED;

5. Defendant's Motion to Dismiss Claim Seven is DENIED AS MOOT; and

6. Plaintiff's request for leave to amend is GRANTED. RGP may file a Second Amended Complaint no later than ten (10) days from the date of this Order in an effort to remedy the deficiencies identified by this Court.

DATED this 28 day of October 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE